IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LANCE HINNERGARDT,

        Plaintiff,

v.                                                                                              Case No. 19-1323-JWB

HERBERT C. HOOVER, M.D.,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's motion to exclude two expert opinions of Dr. George Olive. (Doc. 53.) The motion has been fully briefed and the court held an evidentiary hearing on December 7, 2021. (Docs. 54, 59, 60.) For the reasons provided herein, Plaintiff's motion is DENIED.

**I.     Facts[1]**

This is a personal injury action in which Plaintiff alleges that Defendant was negligent in failing to remove Plaintiff's gallbladder during a June 20, 2017 surgery. On that date, Defendant performed a laparoscopic cholecystectomy on Plaintiff because of a gallbladder disfunction called biliary dyskinesia. After the surgery was performed, Defendant told Plaintiff and Plaintiff's wife that he had completely removed Plaintiff's gallbladder. Defendant also reported in his operative note that he removed the entire gallbladder. Defendant testified that he used a surgical technique known as the critical view of safety to remove the gallbladder. (Doc. 54 at 2; 59 at 1.) Using that technique, a surgeon visualizes the cystic duct and cystic artery to cut the correct structures. The

---

[1] Parts of the factual history were taken from this court's prior ruling on Plaintiff's motion for partial summary judgment. (Doc. 46.)

1

surgeon also removes the gallbladder from its attachment on the liver bed, with dissection starting at the infundibulum and then moving towards the fundus. (*Id.*)

Dr. Tarek Salem, a pathologist, reported that he examined the tissue removed by Defendant and determined that it was a 5.0 x 2.3 x 1.0 cm "previously opened, collapsed gallbladder." (Doc. 59-3 at 1.) On June 21, 2017, Defendant ordered a CT scan. It was interpreted by Dr. James Chang who reported that the scan showed that there had "been a cholecystectomy. Bile ducts appear normal." (Doc. 59-6 at 1.)

Plaintiff developed abdominal pain following the surgery. On June 26, 2017, a doctor told Plaintiff his problems likely resulted from pancreatitis. An MRI of the abdomen was performed at Southwest Medical Center. Dr. Ryan Albritton interpreted that report and noted that the gallbladder was "surgically absent" and that the scan showed "postoperative changes consistent with recent cholecystectomy." (Doc. 59-7 at 1-2.)

In July 2017, Plaintiff's primary care physician thought that Plaintiff had a biloma - a collection of bile that had leaked into the abdomen. Dr. Hunt diagnosed a biloma from a cystic duct leak. Dr. Hunt testified that she had no reason to assume that Plaintiff's gallbladder was still present. A cystic duct leak is a recognized complication of a cholecystectomy and can happen without any negligence on the part of the surgeon. Prior to surgery, Defendant had advised Plaintiff of the possibility of a bile leak. Initially, Dr. Hunt had thought that Plaintiff was just suffering from a recognized surgical complication. (Docs. 35 at 3-4; 40 at 3-5.)

Plaintiff's gastroenterologist, Dr. Tofteland, healed the bile leak by placing a stent in Plaintiff's common bile duct in July 2017. Dr. Tofteland's operative report indicated that the structure causing the leak might have been a long cystic duct or a residual gallbladder "with multiple clips at the distal aspect, from which the leak had originated." (Doc. 59-8 at 1.) Plaintiff

was hospitalized several times during July and August 2017 due to ongoing problems with his abdomen.  On October 24, Dr. Tofteland removed the stent and confirmed that bile was no longer leaking.  The removal of the stent allowed bile to flow again into Plaintiff's gallbladder causing pain and other symptoms.  (Docs. 35 at 5-6; 40 at 5-10.)

On November 2, 2017, an imaging study revealed an "oval-shaped fluid-filled structure...which almost resembles [a] gallbladder."  (Doc. 35-12.)  Further imaging studies suggested that at least a portion of the gallbladder remained and surgeons recommended another laparoscopic cholecystectomy to remove it.  Dr. Sarah Corn removed the gallbladder on November 6, 2017.  Dr. Corn reported finding numerous metal clips that had been previously placed on the top end of Plaintiff's gallbladder.  Defendant testified that no one would have suspected until the November 2017 surgery that Plaintiff's gallbladder had not been removed, he believes that he removed Plaintiff's gallbladder in June 2017, and that the November 2017 surgery likely removed a "walled off biloma." (Doc. 40-1 at 102:3.)  Dr. Means, a pathologist, examined the tissue that Dr. Corn removed and described it as a 6.3 cm long gallbladder with an attached 0.2 cm cystic duct remnant.  (Doc. 54 at 4; 59 at 1.)  Dr. Means testified that the tissue he examined was not a dilated or enlarged cystic duct.

In this action,  Plaintiff alleges a claim of negligence due to Defendant's failure to remove Plaintiff's entire gallbladder.  On March 29, 2021, the court denied Plaintiff's partial motion  for summary judgment on Defendant's statute of limitations defense.  (Doc. 46.)  Defendant has obtained an expert in this matter, Dr. George C. Olive, to testify regarding the standard of care and whether the surgery performed by Defendant was within the standard of care.  Plaintiff now moves to exclude some of Dr. Olive's opinions on the basis that they are not based on reliable methodology.

**II.     Standard**

Federal Rule of Evidence 702, which controls the admission of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, the district court must satisfy itself that the testimony at issue is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony. *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)). The district court must first determine whether the witness is qualified by knowledge, skill, training, experience, or education to render an opinion. *Id.* If so, the district court must determine whether the witness's opinion is reliable by assessing the underlying reasoning and methodology. *Id.* at 1283. The court is not required to admit opinion evidence that is "connected to existing data only by the *ipse dixit* of the expert," and may exclude the opinion if "there is simply too great an analytical gap between the data and the opinion offered." *Id.* (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)). But the rejection of expert testimony is the exception rather than the rule, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 596 (1993).

"The court has discretion to determine how to perform its gatekeeping function under *Daubert*." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1164869, at *3 (D. Kan. Mar. 10, 2020) (citing *Bill Barrett Corp. v. YMC Royalty Co.*, LP, 918 F.3d 760, 770 (10th Cir. 2019)). The most common method of fulfilling that role is by conducting a *Daubert* hearing, "although such a process is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The court conducted a *Daubert* hearing on this matter at which Dr. Olive appeared in person and testified as to his qualifications and opinions in this matter.

### III.    Analysis

Plaintiff's expert, Dr. Olive, has issued an expert report detailing his review of the case and his opinions. Based on his report, he reviewed the depositions of Plaintiff, his wife, Defendant, and numerous medical doctors that have been deposed. Dr. Olive has also reviewed Plaintiff's medical records and the imaging studies. (Doc. 54-14.) Dr. Olive has issued the following opinions:

> 1.    The decision and recommendation by Dr. Hoover to perform the cholecystectomy were indicated and appropriate.
>
> 2.    Dr. Hoover's performance of the laparoscopic cholecystectomy on 6/20/17 fell within the standard of care. He described a "fairly large cystic duct leading in to the gallbladder." The transition from distal gallbladder into the cystic duct can be difficult or impossible to ascertain, especially with an enlarged thickened cystic duct. I suspect a small gallbladder remnant was thought to be thickened cystic duct and was clipped and divided. In retrospect, this is the only logical explanation of all the event that transpired. The tissue looked similar to the pathologists after both surgeries, and both pathology assistants described cystic duct. The imaging that initially showed absent gall bladder is also consistent with this fact. Dr. Tofteland provided the most accurate description of the situation. He was likely correct that a small amount of gall bladder tissue remained.
>
> 3.    A bile leak from cystic duct stump is a well-known complication of cholecystectomy and can occur without negligence on the part of the surgeon. In this case, there is no proof the bile leak was due to negligence.

> 4. After the initial cholecystectomy and bile leak, the gallbladder remnant became increasingly dilated and enlarged. The imaging supports this opinion. The increasingly dilated and large remnant is what led the Wichita surgeons to think they were removing a nearly complete gallbladder. Dr. Corn likely did not cauterize a cystic artery, a fact which makes mistaken her statement that a full triangle of Calot was seen.
>
> 5. The cause of the patient's continued and ongoing abdominal pain and nausea after the November surgery is not clear. In my opinion, it is unlikely to be related to either of his operative procedures. The bile leak is gone and no fluid collections remain on CT scan. Moreover, at least 15% of patients who have cholecystectomy for biliary dyskinesia documented by abnormal HIDA scan will have persistence of the same or similar symptoms after cholecystectomy. This can be due to many factors, and may reflect the fact that the symptoms were not due to the biliary dyskinesia to start with.

(*Id*. at 3-4.)

In the motion, Plaintiff argues that opinions two and four should be excluded. (Doc. 53.) Although Plaintiff does not seriously challenge Dr. Olive's credentials, the court will briefly discuss his qualifications to render medical opinions in this case. Dr. Olive is a general surgeon. He went to medical school at Johns Hopkins University School of Medicine and completed his residency in 1989. He was first board certified in surgery in 1989 and has been recertified multiple times. He estimates that he has performed over 4,000 cholecystectomies. Based on Dr. Olive's knowledge, experience, and education, the court finds that he is qualified to render the opinions he has offered in this case.

Turning to the issues, Dr. Olive has opined that Defendant complied with the standard of care by removing Plaintiff's gallbladder in June 2017. Dr. Olive has opined that the gallbladder was not completely removed due to the difficulty in distinguishing the cystic duct from the distal gallbladder. As a result, Dr. Olive opined that Defendant left a gallbladder remnant inside of Plaintiff after the surgery. This remnant then could have expanded and dilated over time, which was the tissue that Dr. Corn removed. Plaintiff argues that Dr. Olive's opinions lack support in

the facts and data of the case and in science. (Doc. 54 at 4.) Plaintiff further argues that Dr. Olive's theory about expansion and dilation lacks support, runs counter to the evidence, and is medically impossible. (*Id.* at 7.) Essentially, Plaintiff argues that Dr. Olive has not based his opinions on any medical literature or personal experience. Plaintiff argues that there would have been no blood supply going to the remnant gallbladder so Dr. Olive's explanation is not medically possible. Plaintiff also argues that Dr. Olive does not sufficiently explain how both doctors removed gallbladders and cystic ducts. Plaintiff contends that Dr. Olive has cherry picked the evidence in the medical record that he has relied on, such that the opinions are not reliable.

As stated during the hearing, the court finds that Dr. Olive's opinions are reliably based on the medical records and his extensive experience in performing cholecystectomies. Defendant is not required to demonstrate that Dr. Olive "is undisputedly correct." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005) (citation omitted). The proper consideration is whether the method he used in reaching his opinion satisfies the standards in Rule 702. *Id.* To be reliable, an expert's scientific testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. While expert opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation, ... absolute certainty is not required." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995)). Defendant "must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements." *Id.*

Here, Plaintiff argues that Dr. Olive's opinions are not based on facts in the record, but rather based on impossibilities not supported by medical science. In forming his opinions, Dr. Olive relied on his experience and the medical records. There is no dispute that this method is an appropriate method in forming a medical opinion regarding causation and standard of care. *See Roeder v. Am. Med. Sys., Inc.,* No. 20-1051-JWB, 2021 WL 4819443, at *10 (D. Kan. Oct. 15, 2021); *Smith v. Pfizer Inc.*, No. CIV.A. 98-4156-CM, 2001 WL 968369, at *9 (D. Kan. Aug. 14, 2001).

Where, such as here, an expert's testimony is based on experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's note (2000 Amendment)). Dr. Olive has done that here. He has explained that his opinion is based on the medical records in this case and his extensive experience in performing cholecystectomies. Based on his testimony, it is clear that Dr. Olive has intricate knowledge of anatomy and this specific surgical procedure. He has come to his opinions by making rational deductions using his knowledge of the surgery and the anatomy of the body. Although Plaintiff argues that Dr. Olive has essentially worked backwards in developing his opinion in order to essentially agree with Defendant, Dr. Olive has explained how other medical evidence by different providers led to his ultimate opinions. As discussed at the hearing, there were two different imaging studies immediately following the first surgery that lend support to Dr. Olive's opinion that the gallbladder was removed. Rule 703 states that an expert may base his opinion on facts or data in the case if an expert in a particular field would rely on this data. The Advisory Committee Notes to Rule 703 state that "the rule is designed to broaden the basis for expert opinions ... and to bring the judicial

8

practice into line with the practice of the experts themselves when not in court." It further adds that a physician "in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including ... reports and opinions from nurses, technicians and other doctors, hospital records, and X rays." *Id.* Therefore, Dr. Olive's opinions are properly based not only on Defendant's medical reports but also on the imaging reports which state that the gallbladder was surgically absent after the surgery, as well as the pathology reports, including the pathology report generated after the original surgery which described the removed tissue as an opened gallbladder. These facts provide a basis for Dr. Olive's opinions.

Plaintiff also argues that Dr. Olive's opinion that the gallbladder remnant would receive a blood supply and enlarge is not supported by the facts in this case and is medically impossible. Dr. Olive also explained the basis for this opinion during the hearing. Dr. Olive testified that there are medical studies discussing gallbladder remnants being surgically removed after an initial cholecystectomy. Also, Dr. Olive testified that the gallbladder remnant could obtain a blood supply from the numerous smaller blood vessels in that area of the body. Dr. Olive has sufficiently explained his basis for these opinions and Plaintiff's objections are more appropriate for cross examination.

The court finds that Dr. Olive has provided a reliable basis for his opinions and his opinions are relevant to the issues in this case and will assist the trier of fact. Plaintiff's arguments raised in his motion are all legitimate bases for cross examination but they don't fundamentally undermine the reliability of Dr. Olive's opinions. *See Robinson v. Missouri Pacific RR Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) ("the burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion."); *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")

## IV. Conclusion

Plaintiff's motion to exclude two of Dr. Green's opinions (Doc. 53) is DENIED.

IT IS SO ORDERED.  Dated this 10th day of December,  2021.

__s/ John W. Broomes_____<br>
JOHN W. BROOMES<br>
UNITED STATES DISTRICT JUDGE